902 F.2d 1570
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
FORTY-THREE THOUSAND, FIVE HUNDRED TWENTY DOLLARS
($43,520.00) IN U.S. CURRENCY, Defendant-Appellant.
 No. 89-1496.
 United States Court of Appeals, Sixth Circuit.
 May 11, 1990.
 
 Before RALPH B. GUY, Jr. and DAVID A. NELSON, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Ricardo Racines-Prado was stopped by DEA agents at the Detroit Metropolitan Airport as a result of fitting the drug courier profile. He agreed voluntarily to speak with the agents. After a brief conversation, Racines-Prado consented to a search of his carry-on bag and his person. The search yielded $43,520 in currency, most of which was wrapped in cellophane in five bundles secreted in his jacket. Racines-Prado told the agents he was a jewelry salesman from New York and the money was proceeds from recent jewelry sales in the Detroit area. He could not recall, however, from whom he got the money or to whom he sold the jewelry. He had no additional jewelry with him nor any documentation indicating involvement in recent sales of jewelry. The personal papers carried by Racines-Prado revealed that he was a resident alien from Colombia.
 
 
 2
 With the permission of Racines-Prado, the money was taken to the DEA office at the airport and hidden in three different places. A trained narcotics detecting dog was brought in, and the dog alerted positively to all three locations where the money was hidden, indicating a controlled substance residue on the currency.
 
 
 3
 Based upon what occurred at the airport, the DEA agents seized the money and subsequently mailed a Notice of Seizure and Intent to Forfeit to Racines-Prado. Racines-Prado made no claim to the seized currency, but a claim was filed on behalf of Victor Diaz. The Diaz claim was eventually litigated in a one-day bench trial in the ensuing forfeiture proceedings.
 
 
 4
 At trial, Diaz testified that he accumulated the seized currency from a worker's compensation insurance settlement, from his and his wife's employment, and from money he made on the side painting art work on vans. The worker's compensation was in the amount of $31,626.54. The money earned from van painting was never reported to the Internal Revenue Service and was otherwise undocumented.
 
 
 5
 Mr. Diaz also testified and indicated the money saved became a source of acrimony within the marriage. Mr. Diaz wanted to buy a bar and Mrs. Diaz a new home. The money was being kept in a bank account in the name of Mrs. Diaz. At Mr. Diaz's request, Mrs. Diaz began to withdraw the money in small increments from her bank account. After withdrawal, the money was kept in a safe in the basement of their home, the combination to which only she knew.
 
 
 6
 In December of 1987, Mr. Diaz moved out of the house and Mrs. Diaz inexplicably gave him the $42,500 being kept in the basement safe.[1] At the time that Mr. Diaz moved out, the Diazes testified that Racines-Prado had been staying with them for a week or ten days. This testimony is contradicted, however, by the fact that Racines-Prado had in his possession an airline ticket showing his arrival in Detroit just four days prior to his departure. Racines-Prado is a distant relation and a person whom both Diazes described as a close and trusted friend. Mr. Diaz testified that after he left his wife, he gave Racines-Prado all of the cash he had received from Mrs. Diaz, and entrusted Racines-Prado to take it to New York City for him and give it to Mr. Diaz's cousin, a Mr. Jose DeLeon. Mr. Diaz testified that he intended to follow Racines-Prado to New York, where Mr. Diaz's family lived, at a later date. He said that he wrapped the currency in cellophane to prevent it from getting wet.
 
 
 7
 Eight months after the seizure of the money at the airport, Diaz was arrested for his involvement in a transaction involving approximately 16 kilograms of cocaine. At the time of his arrest on August 9, 1988, Victor Diaz told a DEA agent that he was involved with Colombian individuals from New York, and that over the previous year he had been involved with them in several large cocaine deals. Just before the trial in this case, Racines-Prado was arrested by New Jersey state police for possession of cocaine. At the time of this arrest, Racines-Prado was in a car that contained $40,000 in cash in a secret compartment in the trunk.
 
 
 8
 Based upon the record made at trial, the trial judge ordered the money forfeited. Judge Woods found that Diaz had no standing to contest the forfeiture; but, even if standing were presumed, there was probable cause for the forfeiture, and the claimant had not proved by a preponderance of the evidence that there was a legitimate source for the money and that the money was neither the proceeds of, nor used to facilitate, a narcotics transaction. United States v. $50,000 U.S. Currency, 757 F.2d 103, 105 (6th Cir.1985).
 
 
 9
 On appeal, Diaz argues that he has standing and that there was no probable cause for the seizure. Judge Woods considered these same arguments and, in a thorough written opinion, analyzed these contentions and resolved them against Diaz. We agree with Judge Woods' conclusion and adopt his opinion as the opinion of this court on appeal.
 
 
 10
 The facts, which are undisputed, clearly indicate that the DEA agents had sufficient reasonable suspicion to make an investigatory stop of Racines-Prado. During that stop he voluntarily consented to a search, which provided the evidence establishing probable cause.
 
 
 11
 The issue at trial was essentially one of credibility. Judge Woods rejected the Diazes' rather incredible version of how Racines-Prado happened to have their $42,500 on his person at the airport--a version which Racines-Prado never offered and which completely contradicted his equally far-fetched story as to how he received the money.
 
 
 12
 Diaz also claims the subsequent arrest of both Diaz and Racines-Prado were not relevant to the forfeiture issue. Although we disagree, we also conclude that even without this evidence, there is ample support for the trial judge's conclusions in the record.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Diaz only claimed $42,500 of the $43,520 seized